IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HARRY MICHAEL WRIGHT,

    Plaintiff,

v.                                                           CASE NO. 4:10-cv-00474-SPM -GRJ

GADSDEN COUNTY SHERIFF'S
OFFICE, et al,

    Defendants.

_____/

## O R D E R

Plaintiff, proceeding *pro se* brings this cause of action pursuant to 42 U.S.C. §1983. Plaintiff has paid the full filing fee. (Doc. 1). The Court has reviewed the complaint and finds that it should be amended to name the proper defendants and to provide more facts to support his claims.

Pursuant to the Prison Litigation and Reform Act, the Court shall dismiss a case if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §1915A(b)(1). The screening provisions of this statute apply even though Plaintiff has paid the full filing fee and is not proceeding *in forma pauperis*. Thompson v. Hicks, 213 Fed. Appx. 939, 942 (11th Cir. 2007);

Plaintiff claims that on July 6, 2007, he was booked into the Gadsden County Jail with an infected leg, which alarmed another inmate, Defendant Marcus Harris. (Doc. 1, p.5-6). Defendant Harris allegedly threatened Plaintiff with harm and attempted to incite others in the cellblock to harm Plaintiff as well. Plaintiff claims that Correctional

Officer Peterson (not a named defendant) witnessed Harris' actions. Id. at 6. According to Plaintiff, when he complained to CO Peterson about the threatening behavior, Peterson moved Plaintiff to another cellblock. Id. at 7.

On July 14, 2007, Defendant Harris was moved to the same cellblock as Plaintiff. After the move, Plaintiff claims that Harris attacked Plaintiff striking Plaintiff in the temple and left arm. Id. Defendant Sgt. Thompson attended to Plaintiff's injuries because no medical staff was on duty. Sgt. Thompson allegedly told Plaintiff that Sgt. Thompson would not have sent Harris to Plaintiff's cellblock if he known that Plaintiff was being held there. Id. While Sgt. Thompson was attending to Plaintiff, Plaintiff alleges that other jail staff (not named as defendants), Officers Bassett, Roberts, Peterson (another officer named Peterson, but not the same officer who first was told about the threats by Harris), and an unnamed white female officer made comments in Plaintiff's presence to the effect that the officers knew Inmate Harris was violent and prone to commit unprovoked assaults. Id. at 8.

On July 15, 2007, Plaintiff filed an incident report and was told that charges would be filed against Harris. Id. On that same date, Plaintiff lost vision in his right eye and submitted a medical request to see an ophthalmologist. Id. Instead of being treated by an ophthalmologist, Plaintiff was treated by Defendant Dr. Sutton, who allegedly refused Plaintiff's request to see a specialist because she said the jail could not afford it, and she preferred to wait until Plaintiff was committed to the custody of the DOC. Id. at 8-9.

Plaintiff was transported to the Reception Medical Center in Lake Butler, Florida, on September 21, 2007, where it was determined that Plaintiff had no vision in his right

eye. Despite his loss of vision Plaintiff alleges that he was not provided with any care at that time. Id. at 9. Plaintiff was then transferred to Walton Correctional Institution in November 2007. After his transfer to Walton CI, Plaintiff alleges that nothing was done for his eye. Id. According to Plaintiff, he was not seen by a specialist until July 1, 2008, after Plaintiff was transferred back to RMC. The specialist diagnosed Plaintiff with a detached retina. Id. Surgery was performed twice, but unsuccessfully. Id. Plaintiff is now blind in his right eye. Id. at 10.

In any 42 U.S.C. §1983 cause of action, the initial inquiry must focus on whether the two essential elements to a section 1983 action are present. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in any action at law . . . [or] suit in equity.

"A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under the color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992). For liability under 42 U.S.C. §1983, Plaintiff must show an affirmative causal connection between the Defendants' conduct and the constitutional deprivation. Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

As a starting point Plaintiff has improperly named as one of the defendants, the "Gadsden County Sheriff's Office." The Sheriff's Office is, however, not a proper defendant in a § 1983 case because it is not a "person" within the meaning of the

statute and therefore Plaintiff should not name the Sheriff's Office as a defendant.

Secondly, although Plaintiff names Sheriff Young as a defendant, Plaintiff fails to allege any facts to support his claim that Sheriff Young is liable for the failure to protect Plaintiff from the assault and the resulting injury. Plaintiff has failed to allege any facts showing that Sheriff Young had personal knowledge that Inmate Harris posed a risk to Plaintiff or that Sheriff Young took any part in any decisions regarding Plaintiff's medical care. Generally, a person cannot be held liable as a supervisor under section 1983 based solely on the actions and/or omissions of others. See Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995). Plaintiff should name in the complaint only defendants who participated in the alleged deprivation of constitutional rights or those persons who directed the action and/or omission that resulted in such deprivation.

Third, Plaintiff improperly has named Inmate Harris as a defendant. Because Inmate Harris was acting as a private individual and not under color of state law, Harris is not a proper defendant in an action under § 1983. Generally, a person acts under color of state law by virtue of his employment with the state or where the defendant acts in some other public official capacity. West v. Atkins, 487 U.S. 42, 48-50 (1988).

Fourth, because Plaintiff was a pretrial detainee at the time of the events in this case, Plaintiff cannot bring claims under the Eighth Amendment for deliberate indifference and negligence against Defendant Thompson. The Eighth Amendment's prohibition against cruel and unusual punishment applies only to convicted persons and not to pretrial detainees, like Plaintiff. Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir.1994). The minimum standards, however, for providing food, protection and medical needs under the Due Process Clause of the Fourteenth Amendment are the

same as the standards for convicted persons under the Eighth Amendment and, therefore, the Court will construe Plaintiff's Eighth Amendment claim as a claim under the Fourteenth Amendment.

Prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994), *quoting* Hudson v. Palmer, 468 U.S. 517, 526- 527 (1984). In guaranteeing their safety, officials must "protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833, *citing* Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.), *cert. denied* 488 U.S. 823 (1988). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' " Farmer, 511 U.S. at 834. "[A]llowing the beating or rape of one prisoner by another serves no 'legitimate penological objectiv[e]." Id. at 833, *quoting* Hudson, 468 U.S. at 548.

To prevail on a "failure to prevent harm" claim, an inmate must make two showings. First, he must demonstrate "that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834, *citing* Helling v. McKinney, 509 U.S. 25, 35 (1993). Second, he must show that the defendant prison official had a "culpable state of mind" in that he knew of and disregarded "an excessive risk to inmate health or safety." 511 U.S. at 834, 837. In other words, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Negligence, or a lack of due care under the circumstances, is insufficient to show a violation of the Constitution. Davidson v. Cannon, 474 U.S. 344, 347 (1986). Proof of

deliberate indifference entails something more than negligence, but is satisfied by something less than actions undertaken with an intent to cause harm. <u>Farmer</u>, 511 U.S. at 835-36. A prison official or jailor, when faced with the knowledge of a substantial risk of serious harm to a prisoner, must take "reasonable measures to abate it" or his inaction will constitute deliberate indifference to that risk. <u>Id.</u> at 847.

Applying this law to the facts provided in the complaint, the Court concludes that Plaintiff has not offered any facts demonstrating that Thompson had a "culpable state of mind " or that Thompson knew Defendant Harris posed a serious risk of harm to Plaintiff. According to Plaintiff, Officer Peterson and not Defendant Thompson, was the officer who witnessed Harris threatening Plaintiff. While Plaintiff claims that Defendant Thompson admitted Thompson would not have placed Plaintiff and Harris together in a cell if he had known Plaintiff was there, these facts suggest, at most, negligence on Thompson's part and not deliberate indifference. If Plaintiff has additional facts supporting this claim – particularly related to what Defendant Thompson knew about the events between Harris and Plaintiff – Plaintiff should provide these facts in an amended complaint or delete Thompson as a defendant in this cause.

Finally, with regard to Plaintiff's claim against Dr. Sutton alleging denial of medical care, Plaintiff will need to provide more facts to support this claim. To allege a claim for deliberate indifference to a serious medical need Plaintiff must allege more than mere negligence but something less than an intent to cause harm. <u>Farmer</u>, 511 U.S. at 837. For an official's actions to rise to the level of deliberate indifference, subjective recklessness, as defined in criminal law, must be shown. <u>Id.</u> The Eleventh Circuit has held that there are four requirements to establish a claim alleging a denial of

medical care. Plaintiff must demonstrate "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000). Thus, Plaintiff should provide facts addressing when he first sought treatment from Dr. Sutton, the treatment that was rendered, Plaintiff's condition when he was examined, and any other information that would support his claim that Dr. Sutton failed sufficiently to respond to Plaintiff's serious medical needs. If Plaintiff's only complaint against Dr. Sutton is that Dr. Sutton did not refer Plaintiff to a specialist despite Plaintiff's request to see a specialist this would not be sufficient to state a claim because purely medical judgment "that in hindsight...may have been poor or even that may have constituted negligence or medical malpractice does not elevate Plaintiff's claim to a tort of constitutional dimensions." Pate v. Peel, 256 F. Supp.2d 1326, 1327 (N.D. Fla. 2003), *citing* Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (differences in opinion between medical staff and inmate do not state claim).

In light of Plaintiff's *pro se* status, the Court will permit Plaintiff an opportunity to amend his Complaint to name the proper defendants and to provide more facts about his claim against Dr. Sutton. To amend his complaint, Plaintiff should completely fill out a new civil rights complaint form, marking it "Amended Complaint." An amended complaint completely replaces all previous complaints and all earlier complaints are disregarded. N.D. Fla. Loc. R. 15.1. Plaintiff should file the amended complaint in the Court and keep one identical copy for himself. In amending, Plaintiff should carefully review the following to determine whether he can present allegations sufficient to state a cause of action:

1) Plaintiff must state what rights have been violated under the Constitution, laws or treaties of the United States. It is improper for the Plaintiff to merely list constitutional or federal rights. Further, Plaintiff must provide support in the statement of facts for the claimed violations.

2) Plaintiff should clearly describe how each named defendant is involved in the alleged constitutional violation(s) in the body of the complaint. Plaintiff should note that in civil rights cases, more than conclusory and vague allegations are required to state a cause of action. Plaintiff must also show how he was harmed or injured by the actions and/or omissions of the defendant(s).

3) Plaintiff should name only defendants who participated in the alleged deprivation of constitutional rights or those persons who directed the action and/or omission that resulted in such deprivation.

Accordingly, it is **ORDERED:**

1. The **Clerk** is directed to send the Plaintiff a blank civil rights complaint form, which he shall complete in full and file on or before **January 7, 2011.**

2. Failure to comply with this Order in the allotted time will result in a recommendation to the district judge that this cause be dismissed.

**DONE AND ORDERED** this 17th day of December 2010.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge