IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HARRY MICHAEL WRIGHT,

    Plaintiff,

v.                                                       CASE NO. 4:10-cv-474-RH-GRJ

MORRIS YOUNG, et al.,

    Defendants.

_____/

## **REPORT AND RECOMMENDATION**

This prisoner civil rights case, arising from an incident in which Plaintiff was beaten by another prisoner, is before the Court on Defendant Keyshonda Thompson's ("Defendant Thompson's") Motion for Summary Final Judgment. (Doc. 67.) Plaintiff has responded to the motion, Doc. 72, and the motion is therefore ripe for review. For the reasons set out below, the undersigned respectfully recommends that Defendant Thompson's Motion for Summary Judgment should be **GRANTED**, and that the remaining claims in this case against Defendants Morris Young and Carol Sutton should be set for trial.

## **I. BACKGROUND**

Plaintiff, a prisoner in the custody of the Florida Department of Corrections ("FDOC") at the Bay Correctional Facility in Panama City, Florida, filed a First Amended Complaint on the Court's civil rights complaint form to be used by prisoners for actions under 42 U.S.C. § 1983. (Doc. 9.) The following background facts are primarily drawn from the Complaint.

Plaintiff alleges that on July 6, 2007, he was booked into the Gadsden County Jail as a pre-trial detainee on pending state charges. When he was booked into the jail Plaintiff had a skin infection on his left leg, which was red, swollen, blistered and had open sores. (Doc. 9, at 6.) Plaintiff was originally placed in the "bullpen," cellblock B-1. The condition of Plaintiff's leg alarmed Marcus Harris ("Harris"), another inmate in Plaintiff's cellblock, and Harris allegedly threatened Plaintiff with harm and attempted to incite others in cellblock B-1, to harm Plaintiff as well. (*Id.* at 6-8.)

Plaintiff alleges that on July 7, 2007, Officer Lamonta Peterson ("Peterson"), a correctional officer at Gadsden County Jail, was passing out meal trays in cellblock B-1 when he witnessed Harris's threatening behavior towards Plaintiff. (*Id.* at 8.) When Harris continued his threatening behavior towards Plaintiff after lunch, Plaintiff ran to the entrance to the cellblock and started to kick the door and scream in order to get the attention of jail staff. (*Id.*) Officer Peterson responded to Plaintiff's calls. Plaintiff informed Officer Peterson that Harris was continuing to threaten Plaintiff. Plaintiff requested Officer Peterson to transfer Plaintiff to a different cellblock. (*Id.* at 8-9.) Officer Peterson told Plaintiff to " chill out" and advised Plaintiff that Officer Peterson knew Harris was " crazy as hell." Consequently, Officer Peterson advised Plaintiff "not to 'piss him [Harris] off, ... [because Harris] ... will whip your ass.'" (*Id.* at 9.) Officer Peterson also told Plaintiff he would talk to the Sergeant on duty at the time to see whether a transfer out of cellblock B-1 could be arranged for Plaintiff. (*Id.*)

After the shift change that same day, Officer Kevin Peterson, another correctional officer at Gadsden County Jail, escorted Plaintiff from cellblock B-1 to a different cellblock, cellblock A-2. (*Id.*) Plaintiff informed Officer Kevin Peterson of

Harris's threatening behavior towards Plaintiff. Kevin Peterson told Plaintiff he knew Harris was " 'crazy as hell,'" and he was aware Harris had a history of violence. (*Id.*) Kevin Peterson also promised to talk to the Defendant Sergeant Keyshonda Thompson to inform Sgt. Thompson of the issues Plaintiff was having with Harris. (*Id.*) Sgt. Thompson, however, was not working on July 7, 2007. (Doc. 67-3, at 2.)

One week later, on July 14, 2007 – after Plaintiff had been relocated to cellblock A-2 – Officer Kevin Peterson moved Harris into cellblock A-2 and placed Harris into the same cell as Plaintiff. (Doc. 9, at 9.) Almost as soon as Harris entered the cellblock, he attacked Plaintiff, striking Plaintiff on the left arm and in the right side of the temple. Plaintiff sustained a large, bleeding wound to his arm. (*Id.*) As a result of the assault other detainees in cellblock A-2 screamed and pounded on the cellblock door to get the attention of the correctional officers. Four officers responded, and one officer placed Harris in another cell while the others escorted Plaintiff to the medical department. (*Id.* at 10.)

Defendant Sergeant Keyshonda Thompson ("Sgt. Thompson"), the shift supervisor on duty when Plaintiff was attacked by Harris, met the three correctional officers and Plaintiff at the medical department. (*Id.*) No medical staff were on duty, as it was almost midnight, and thus the correctional officers were required to render first aid to Plaintiff themselves. (*Id.*) Defendant Thompson allegedly told Plaintiff " 'Had I known you were down in A-2, I would not have sent him (meaning Inmate Marcus Harris) down there. But he's raising so much hell and wanting to fight everybody everywhere I put him, I had to move him somewhere. You know he's a little crazy in the head anyway.'" (*Id.*) The other three correctional officers apparently then each made

statements that they all knew Harris had violent tendencies. (*Id.* at 10-11.) Plaintiff filled-out an incident report the next day at Sgt. Thompson's direction and Sgt. Thompson told Plaintiff that charges would be filed against Harris. (*Id.* at 11.)

As a result of the incident with Harris, Plaintiff lost vision in his right eye. (*Id.*) Plaintiff submitted a medical request to see a doctor and was treated by Defendant Dr. Carol Sutton, who allegedly refused Plaintiff's request to see an opthalmologist because the jail could not afford it. (*Id.* at 11-13.)

Plaintiff was transported to the FDOC's Reception and Medical Center ("RMC") in Lake Butler, Florida, on September 21, 2007, where it was determined that Plaintiff had no vision in his right eye. (*Id.* at 13.) Despite his loss of vision Plaintiff alleges that he was not provided with any care at that time. (*Id.*) Plaintiff was then transferred to Walton Correctional Institution in November 2007. (*Id.*) After his transfer to Walton CI, Plaintiff alleges nothing was done for his eye. (*Id.*) According to Plaintiff, he was not seen by a specialist until July 1, 2008, after Plaintiff was transferred back to RMC, and the specialist diagnosed Plaintiff with a detached retina. (*Id.*) Surgery was performed twice, but unsuccessfully, and Plaintiff is now blind in his right eye. (*Id.* at 13-14.)

In his Complaint, Plaintiff brought Fourteenth Amendment deliberate indifference claims against Defendants Lamonte Peterson, Kevin Peterson, Keyshonda Thompson, Dr. Carol Sutton and Sheriff Morris Young. The Court dismissed the claims against Defendants Kevin Peterson and Lamonte Peterson. (Docs. 20, 48.) Sgt. Thomspon has now moved for summary judgment, arguing that Plaintiff has presented no evidence that she was deliberately indifferent to his constitutional rights.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). "In determining whether summary judgment is appropriate, [the Court is] required to draw all reasonable inferences in favor of the non-moving party, not all *possible* inferences." Horn v. United Parcel Services, Inc. 433 F. App'x 788, 796 (11th Cir. 2011) (emphasis added).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

The Eleventh Circuit has noted that

[i]t is well settled that "after adequate time for discovery and upon motion, [summary judgment is appropriate] against a party who fails to make a showing sufficient to establish the existence of an element essential to

> that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, in response to a motion for summary judgment, a nonmoving-plaintiff must present evidence in support of his allegations sufficient to raise a genuine issue of material fact regarding each element of his claim. As established in *Celotex,* it is not necessary for the party moving for summary judgment to introduce any evidence at all in order to prevail on his motion. Rather, in cases in which the nonmoving party will bear the burden of proof at trial, the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him. *Id.* Where the nonmoving party fails to present such evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

*Maxi-Taxi Of Fla., Inc. v. Lee County Port Auth.,* 301 F. App'x 881, 885 (11th Cir. 2008). Where the nonmoving party bears the burden of proof, he must offer more than a mere "scintilla of evidence" in support of his position. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

## DISCUSSION

Sgt. Thompson argues that she is entitled to summary judgment because she is protected by qualified immunity. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Andujar v. Rodriguez,* 486 F.3d 1199, 1202 (11th Cir. 2007) (citations omitted); *Brandon v. Holt,* 469 U.S. 464, 472-73 (1985). Further, qualified immunity is only available in suits for damages. *See, e.g., Ashcroft v. al-Kidd,* ___ U.S. ___, 2011 U.S. LEXIS 4021, **7 ("Qualified immunity shields federal and state officials from money

damages"); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official wishing to invoke the affirmative defense of qualified immunity must have been acting within his discretionary authority. *Skop v. City of Atlanta, Georgia,* 485 F.3d 1130, 1136 (11th Cir. 2007).

There are two prongs to a qualified immunity test. The plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1264 (11th Cir. 2004). The U.S. Supreme Court has held that lower courts are permitted to exercise discretion in deciding which prong of the test to address first. *Pearson v. Callahan,* ___ U.S. ___, 129 S. Ct. 808, 818 (2009). Here, Sgt. Thompson argues that Plaintiff has failed to provide any evidence in support of his argument that she was deliberately indifferent to his safety in the prison, and accordingly will be unable to demonstrate that she violated a constitutional right.

Plaintiff was a pre-trial detainee in custody at the Gadsden County Jail awaiting the resolution of charges against him when the events in the First Amended Complaint occurred. Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir.1996) However, "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees". *Id.*

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)) (omission in original). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. For a prison official to be constitutionally liable for failing to protect the safety of an inmate, the prisoner must product "sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that harm; and (3) causation." *Id.* (quoting *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995)). Deliberate indifference requires a showing that the defendant official "must have been 'subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind." *Id.* (quoting *Farmer*, 511 U.S. at 834-38) (internal quotations omitted).

For a prison official to be liable for failure to protect an inmate, "there must be much more than mere awareness" that the attacker is a "'problem inmate' with a well-documented history of prison disobedience" and a propensity to violence. *Carter*, 352 F.3d at 1349. The official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also 'draw that inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). A "generalized awareness of risk" that an inmate is problematic "does not satisfy the subjective awareness requirement," because "merely negligent failure to protect an inmate from attack does not justify liability

under section 1983." *Id.* at 1350 (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).

For Sgt. Thompson to be constitutionally liable for failing to protect Plaintiff from Harris's attack, Plaintiff would have to show that Sgt. Thompson was aware of specific facts supporting an inference that Plaintiff was at a substantial risk of serious harm, *and* that she actually drew such an inference. A mere awareness on the part of Sgt. Thompson that Harris was a "problem inmate" is insufficient. While Plaintiff is the non-moving party in this summary judgment motion, he "will bear the burden of proof at trial," and accordingly must present evidence in support of his claims to survive summary judgment. *Maxi-Taxi Of Fla., Inc.*, 301 F. App'x at 885. The undersigned finds that Plaintiff has failed to put forth evidence supporting his claim that Sgt. Thompson was deliberately indifferent to his constitutional rights.[1]

In his response to the motion for summary judgment, Plaintiff argues that Sgt. Thompson was aware of a substantial risk of serious harm, to Plaintiff and to other inmates, because she was aware that Harris was a violent individual and was incarcerated because of charges of violent crimes. (Doc. 72, at 8-10.) Plaintiff also asserts that Harris assaulted a correctional officer on the same

---

[1] In his response to the motion for summary judgment, filed February 11, 2013, Plaintiff repeatedly asserts that "discovery in this area is not complete." (Doc. 72-2.) Plaintiff is incorrect. Discovery in this case closed on November 9, 2012. (Doc. 49.) The Court granted Plaintiff's motion to serve two subpoenas on non-parties, in light of Defendants' non-objection to the request, after discovery had closed. (Doc. 71.) However, this did *not* have the effect of extending the general discovery deadline, which had already passed. In any case, the information requested in those subpoenas related only to Plaintiff's claims against Defendants Young and Sutton, and had nothing to do with the claims against Defendant Thompson. Accordingly, Plaintiff's assertion that discovery is ongoing is misplaced, and the motion for summary judgment is ripe for review.

*Case No: 4:10-cv-474-RH-GRJ*

night that Plaintiff himself was assaulted. As in *Carter*, evidence that Sgt. Thompson was aware that Harris had a "propensity for being a problematic inmate" is insufficient to show that she was deliberately indifferent to Plaintiff's rights. 352 F.3d at 1350. Plaintiff has pointed to no evidence that Sgt. Thompson was aware of "*specific facts*" from which an inference of serious harm could be drawn. *Id.* at 1349 (emphasis added). In recommending that Plaintiff's claims against Sgt. Thompson should survive a motion to dismiss, the undersigned "[a]ssum[ed] for the purposes of this motion that Thompson not only knew that Harris was dangerous but knew Harris previously had assaulted Plaintiff." (Doc. 30, at 9.) At the summary judgment stage, however, Plaintiff may not rest on his pleadings, but must point to some evidence that Sgt. Thompson was aware that Harris was a specific threat to him.

It appears, on this record, that the only way that Sgt. Thompson would know that Harris had threatened Plaintiff when they were housed together in the "bullpen," cellblock B-1, is if Officer Lamonte Peterson or Officer Kevin Peterson had told her about the threats. Plaintiff has pointed to no evidence that this occurred. Plaintiff asserts in his Complaint that he complained to Officer Lamonte Peterson about Plaintiff's threats on July 7, 2007, and that Officer Lamonte Peterson told him that he would speak to the sergeant on duty to see if he could arrange a transfer. (Doc. 9, at 9.) Sgt. Thompson's timesheet reflects that she did not work on July 7. (Doc. 67-3, at 2.) In his deposition, Plaintiff testified that Officer Lamonte Peterson "didn't say anything about getting me out of the cell. He said he might come back later on." (Doc. 67-2, at 9.)

Accordingly, Plaintiff's assumption that Officer Lamonte Peterson informed Sgt. Thompson that he had been threatened by Harris is merely speculative.

Plaintiff also asserted in the Complaint that on July 7, 2007, Officer Kevin Peterson escorted him from the bullpen, cellblock B-1, to cellblock A-2. (Doc. 9, at 9.) He asserted that he told Officer Kevin Peterson about his problems with Harris, and that Officer Kevin Peterson told Plaintiff that he knew that Harris had a propensity towards violence. Plaintiff asserted that Officer Kevin Peterson told him that he would tell Sgt. Thompson about the problems between Plaintiff and Harris. (*Id.*) As noted above, however, Sgt. Thompson was not working at the jail on July 7, and there is no evidence that Officer Kevin Peterson actually told Sgt. Thompson anything about the conflict between Harris and Plaintiff. In his deposition, Plaintiff stated that he "got the impression because I was being moved out of [cellblock B-1], that was going to basically take care of the problem." (Doc. 67-2, at 11.) Plaintiff stated that "[o]ther than move me, there was really nothing [Officer Kevin Peterson] could do, other than keep us separated." (*Id.*) He further stated that he did not ask Officer Kevin Peterson to do anything else with respect to the situation with Harris. (*Id.*) Accordingly, Plaintiff's allegation that Officer Kevin Peterson informed Sgt. Thompson of the prior conflict between himself and Harris is, on this record, merely speculative.

Because Plaintiff has presented no specific evidence to support his claims that Sgt. Thompson was aware of the substantial risk of serious harm, the instant case is similar to *Carter*, where the defendant correctional officer knew that the

plaintiff's cellmate was a "problem inmate," and the plaintiff had told officials that his cellmate was "acting crazy." *Carter*, 352 F.3d at 1349. Because the plaintiff had identified no specific facts that would have placed the defendant officers on notice of a substantial risk of serious harm, the Eleventh Circuit affirmed the district court's grant of summary judgment to the officers.

Likewise, in *McBride v. Rivers*, 170 F. App'x 648 (11th Cir. 2006) (per curiam), the Eleventh Circuit affirmed the district court's grant of summary judgment to the defendant correctional officers where the plaintiff testified that he requested the officers not to "place him in a cell with anyone with whom he might have problems," and that he told the officers that he previously had problems with the inmate who attacked him and was in fear for his life. The Circuit Court's reasoning was based on the fact that the plaintiff "did not identify a specific prior incident, from which the defendant could infer that a substantial risk existed." *McBride*, 170 F. App'x at 655.

In contrast, in *Rodriguez v. Secretary for Department of Corrections*, 508 F.3d 611 (11th Cir. 2007), the Eleventh Circuit reversed the district court's grant of summary judgment to one defendant and judgment as a matter of law to another defendant. In *Rodriguez*, the prisoner had specifically told the defendant correctional officers that he had been threatened by gang members, was afraid for his life, and requested a transfer. The prisoner made these requests repeatedly verbally and in writing, but the officers removed him from protective custody and placed him in the general population, where he was stabbed by a

gang member. Here, Plaintiff has presented no evidence that he informed Sgt. Thompson of his fear of Harris, and has not presented any evidence that Officers Lamonte or Kevin Peterson informed her of the threat.

Sgt. Thompson also argues that insofar as Plaintiff has sued her in her official capacity, such a claim is redundant because Plaintiff has already sued the office of the Sheriff by suing Sheriff Morris Young in his official capacity. Plaintiff does not specify in his Complaint whether he has sued Sgt. Thompson in her official capacity as well as in her individual capacity. Assuming for the purposes of this motion that Plaintiff did intend to sue Sgt. Thompson in her official capacity—which appears to be the case from Plaintiff's response to the motion—the undersigned finds that such a claim is redundant. An official capacity claim against Sgt. Thompson is equivalent to a suit against the office of the Sheriff, and Plaintiff has already made such a claim against Sheriff Young. Accordingly, summary judgment should be granted to Sgt. Thompson on this claim.

Finally, Sgt. Thompson argues that she is entitled to summary judgment on any state law claim of negligence that Plaintiff has asserted. In his Complaint, Plaintiff states specifically that he is pursuing a Fourteenth Amendment deliberate indifference claim against Sgt. Thompson, and does not cite Florida state law. However, Plaintiff does assert in the Complaint that "Sgt. Thompson had a legal responsibility and common law duty of reasonable care to protect Plaintiff. . . and Sgt. Thompson knew the potential for harm was

foreseeable, and Sgt. Thompson's actions were in bad faith, with malicious purpose, and in such a manner exhibiting wanton and willful disregard of Plaintiff's human rights, safety, and/or property." (Doc. 9, at 17.) This language tracks the language of Florida Statute § 768.28, suggesting that Plaintiff may have intended to bring a state law negligence claim against Sgt. Thompson. As Sgt. Thompson argues, however, Florida law provides that Plaintiff may not sue an officer of the state in her individual capacity unless she has acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Plaintiff has presented no evidence that Sgt. Thompson acted in this way.

Accordingly, Plaintiff's "exclusive remedy. . . shall be by action against the governmental entity, or the head of such entity in his or her official capacity." *Id.* Therefore, the undersigned recommends that insofar as Plaintiff has made out a state law negligence claim against Sgt. Thompson, Sgt. Thompson is entitled to summary judgment. Plaintiff's remaining claim against Sheriff Morris Young in his official capacity may be construed to include a state law claim for negligence. For the same reasons, Plaintiff's request for punitive damages against Sgt. Thompson should fail.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant Keyshonda Thompson's motion for summary judgment, Doc. 67, should be **GRANTED**, and the claims against her should be dismissed with prejudice. The

remaining claims in this case, against Defendants Morris Young and Carol Sutton, should be set for trial.

**IN CHAMBERS** this 26th day of April 2013.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**